DAVID L. ANDERSON (CABN 149604)
United States Attorney

HALLIE HOFFMAN (CABN 210020)
Chief, Criminal Division

SAILAJA M. PAIDIPATY (NYBN 5160007)
Assistant United States Attorneys

    450 Golden Gate Avenue, Box 36055
    San Francisco, California 94102-3495
    Telephone: (415) 436-7200
    FAX: (415) 436-7234
    sailaja.paidipaty@usdoj.gov

Attorneys for United States of America

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>    Plaintiff,<br><br>  v.<br><br>BRAYAN MARTINEZ,<br><br>    Defendant. | NO. 19-CR-0381-05 CRB<br><br>**UNITED STATES' SENTENCING MEMORANDUM**<br><br>Judge: Hon. Charles R. Breyer<br>Sentencing Date: April 30, 2020<br>Time: 1:00 pm |

## I. INTRODUCTION

Brayan Martinez's life revolved around the drug trafficking organization (DTO) run by Andy Reanos-Moreno. During the day, Martinez sold drugs in the Tenderloin neighborhood of San Francisco that he bought from Reanos-Moreno. At night, he returned home to the house found for him by the DTO, where he lived with his co-defendants, and fellow street-level drug dealers, Jose Perdomo Moreno and Allan Funez Osorto.

As Martinez is not the first defendant in this case to face sentencing, the Court is aware of the general overview of how the Reanos-Moreno DTO operated: Reanos-Moreno found housing for his street-level dealers in the East Bay, and in exchange, the dealers purchased drugs from Reanos-Moreno to resell in the Tenderloin.

For his part, Martinez served as a reliable foot soldier for the DTO. Despite numerous arrests and a felony drug conviction, Martinez remained undeterred and continued selling drugs in the Tenderloin. In April 2019, he ran from officers of the San Francisco Police Department (SFPD) and dropped bags of drugs in the process. (Dkt. 1, Compl. ¶¶ 180-183.) The following month, May 2019, he pled guilty to Possessing Drugs for Sale, in violation of California Health and Safety Code Section 11351. (*See* Declaration of Sailaja M. Paidipaty ("Paidipaty Decl.") at Exhibit A.) In June 2019, when state officers and federal agents searched the house on 103rd Avenue in Oakland where Martinez and his co-defendants lived (the "103rd Avenue House"), they found paperwork from the San Francisco Superior Court regarding Martinez's obligations on probation following the May 2019 conviction. (*Id.*) During the same search, officers and agents also seized distribution quantities of methamphetamine, heroin, and cocaine base (crack). (Dkt. 1, Compl. ¶¶ 237-242.)When law enforcement entered the home, Martinez ran and dropped bags of methamphetamine and a cutting board that he presumably used as he repackaged the drugs for sale. (Dkt. 1. Compl. ¶¶ 237-239.) Instead of quitting the drug business at that point, Martinez and his co-defendants simply moved to another house in Oakland found by the DTO (the "High Street Apartment"), and continued their drug sales.

The government acknowledges that Martinez was a street-level drug dealer, not a mid-level drug supplier. Further, unlike his co-defendants, Martinez was not intercepted on the wiretap coordinating with Reanos-Moreno. Instead, his housemates, Perdomo Moreno and Funez Osorto handled communications with Reanos-Moreno with respect to ordering resupplies of drugs for their house. But, there is no question that Martinez repeatedly sold drugs and on more than one occasion ran from police.

A probationary sentence failed to deter Martinez in the past. In order to promote both specific and general deterrence, and to protect the community, the government seeks the imposition of a custodial sentence - 63-months (the low-end of the Guidelines) - followed by three years of supervised

release, a $100 special assessment, and forfeiture of $4,465 seized from the 103rd Avenue House in June 2019, and $6,895 seized from the High Street Apartment in August 2019.

## II. SENTENCING GUIDELINES CALCULATIONS

As set forth in the parties' written plea agreement, the parties agree to the following Sentencing Guidelines calculation:

    a.    Base Offense Level, U.S.S.G. §§ 2D1.1(a)(5), (c)(6):    28
         (At least 700 KG but less than 1,000 KG of Converted Drug Weight)

    b.    Acceptance of Responsibility:    - 3

    c.    Adjusted Offense Level:    25

The base offense level reflects the combined quantity of drugs seized from the 103rd Avenue House and the High Street Apartment following the execution of federal search warrants.

Martinez is a Criminal History Category II. The Guidelines range for imprisonment associated with adjusted offense level 25 and Criminal History Category II is 63 to 78 months.

## III. GOVERNMENT'S SENTENCING RECOMMENDATION

The Court should impose a sentence sufficient, but not greater than necessary, to reflect the purposes of sentencing that Congress identified in 18 U.S.C. § 3553(a)(2). *United States v. Carty*, 520 F.3d 984, 991 (9th Cir. 2008). The Court should begin by calculating the correct sentencing range under the Sentencing Guidelines. *Id.* The Guidelines are "the 'starting point and the initial benchmark,'" *United States v. Ellis*, 641 F.3d 411, 415 (9th Cir. 2011) (quoting *United States v. Kimbrough*, 552 U.S. 85, 108 (2007)), and the Court should "remain cognizant of them throughout the sentencing process." *United States v. Gall*, 552 U.S. 38, 50 n.6 (2007). After determining the appropriate Guidelines calculations, the Court should then evaluate the sentence for substantive reasonableness in light of the factors set out in Section 3553(a). *Carty*, 520 F.3d at 991-93. Here, the most important considerations are the nature and circumstances of the offense, the need to afford adequate deterrence, and the protection of the public. 18 U.S.C. § 3553(a)(1), (a)(2)(B)-(C).

The charges here stem from a federal wiretap investigation described in detail in the Criminal Complaint filed on August 31, 2019. (*See* Dkt. 1, Compl. (originally filed under 3:19-71162 TSH).)

As described in the Complaint, the investigation uncovered an organized drug network where Reanos-Moreno housed street-level dealers in houses and apartments in the East Bay. (*See* Dkt. 1, Compl. ¶¶ 17-26.) On a near daily basis, the street-level dealers placed orders for drugs with Reanos-Moreno who then either dropped them off himself or sent a runner to make the drop-off. (*Id.*) Martinez and the other street-level dealers then traveled to the Tenderloin to resell the drugs. (*Id.*)

Throughout 2019, SFPD officers and DEA agents caught Martinez engaging in drug trafficking. On April 17, 2019, an undercover federal agent approached Martinez in the Tenderloin and asked, "What's up? Rock?" (Dkt. 1, Compl. ¶ 175.) The agent used common slang to refer to cocaine base, more commonly known as crack. Martinez initially responded, "Yes, how much?" (*Id.*) At that point, however, Martinez got suspicious of the undercover and claimed he only sold marijuana. (*See* Dkt. 1, Compl. ¶¶ 175-76.)

Two days later, on April 19, 2019, SFPD officers saw Martinez give a plastic baggie containing what appeared to be narcotics to an unidentified man on Hyde Street near Golden Gate Avenue in the Tenderloin. (Dkt. 1, Compl. ¶ 180.) Suspecting drug trafficking, the officers got out of their patrol car to speak with Martinez. (Dkt. 1, Compl. ¶ 181.) Seeing the officers, Martinez took off running. (*Id.*) A University of California Police Officer who happened to be walking out of the Philz Coffee Shop across the street from the Phillip Burton Federal Building managed to catch Martinez as he ran by Philz. (*Id.*) Nearby commercial surveillance cameras showed Martinez dropping a plastic bag that police later recovered. (Dkt. 1, Compl. ¶¶ 182-83.) The bag contained over 100 smaller baggies of suspected narcotics, including cocaine, heroin, and methamphetamine. (*Id.*)

According to records found by agents in the 103rd Avenue House, on May 6, 2019, Martinez pled guilty to one count of possessing drugs for sale, in violation of California Health and Safety Code Section 11351.5. (*See* Paidipaty Decl., Exhibit A.) On June 4, 2019, the Superior Court of San Francisco sentenced Martinez to a three year term of probation. (*Id.*) Just seven days later, agents executed the search warrant at the 103rd Avenue House where they found distribution amounts of methamphetamine, heroin, and cocaine. (Dkt. 1, Compl. ¶¶ 237-242.) When agents passed through the gate at the edge of the property, Martinez began running out the back. (Dkt. 1, Compl. ¶ 237.) Agents

identified themselves and told Martinez to stop, but Martinez turned away. (Dkt. 1, Compl. ¶ 238.) An agent ultimately apprehended Martinez and seized two baggies of drugs and a cutting board that Martinez dropped as he ran. (Dkt. 1, Compl. ¶¶ 238-39.) Drug testing later determined that the baggies contained approximately one ounce (28 grams) of pure methamphetamine and one and a half grams of heroin. (*Id.*) In total, officers seized over 19 grams of heroin, 41 grams of pure methamphetamine, and 8.5 grams of cocaine base from the 103rd House.

Despite another arrest, Martinez and his co-conspirators were at it again soon. By the end of July 2019, SFPD officers saw Martinez, Perdomo Moreno, and Funez at the High Street Apartment. Previously during the investigation, officers believed Reanos-Moreno's drug runner lived at that location. SFPD officers also saw Martinez in the Tenderloin despite a stay away order imposed as a result of his May 2019 conviction. On August 6, 2019, agents executed a federal search warrant at the High Street Apartment and seized approximately 6 grams of heroin, 8.8 grams of pure methamphetamine, and 6 grams of cocaine base (crack). Martinez, Perdomo Moreno, and Funez were arrested pursuant to the Criminal Complaint.

Martinez's conduct was repeated and undeterred by his arrests and conviction. Mere days after being sentenced to a term of probation, Martinez was packaging an ounce of pure methamphetamine for sale. Martinez was provided every opportunity to walk away from drug dealing without the imposition of a prison sentence. Both to send a message to this defendant as well as other street-level dealers who prey on the community with no fear of consequences, this Court must sentence Martinez to a meaningful custodial term.

//
//
//
//
//
//
//

## IV. CONCLUSION

The government recommends that the Court sentence Martinez to 63 months in prison, 3 years of supervised release, a $100 special assessment, and forfeiture of $4,465 seized from the 103rd Avenue House in June 2019, and $6,895 seized from the High Street Apartment in August 2019

DATED: April 23, 2020

Respectfully submitted,

DAVID L. ANDERSON
United States Attorney

_/s_
SAILAJA M. PAIDIPATY
Assistant United States Attorney